2149, Uniloc USA, Inc. v. Acronis, Inc. Ms. Carlin. May it please the Court. As this Court in Martek v. Johnson & Johnson found, when a patentee asserts infringement based on a proposed claim construction that is unsubstantiated by intrinsic evidence, there is sufficient evidence that the patentee filed an objectively baseless lawsuit and can be found exceptional under Section 285. Also in that case, Martek, this Court found that advancing plain meaning for a term does not provide any cover for a patentee to go ahead and file a frivolous and unsupported allegation of infringement. Uniloc here brought an objectively baseless case against Acronis and maintained the baseless case and extended the litigation and caused Acronis to incur needless expense. And so after... Counsel. Counsel. Can I clarify something? You're talking about abuse of discretion standard here. That's right, Your Honor. This is abuse of discretion and as this Court has said in Adjusticam, deference is not absolute. And so here we ask Your Honors to review this case looking at what Uniloc brought as a baseless claim construction. They say it's a vanilla patent case, but it's not. What happened here is actually not okay. They had a baseless claim construction and then continued on after a devastating Markman order when they tried to leverage the cost of litigation to get a nuisance value settlement from Acronis and then they abandoned the case right when expert reports were due, right before the deadline and just up and dismissed the case and they never filed an expert report. The case was unreasonable from the very start, though. They based their case on a claim construction that had no foundation. And as this Court has said in Raylon, there's a threshold below which a claim construction is so unreasonable that no reasonable litigant could believe it would succeed. This counsel... Counsel, though, the cases that you're citing to us and putting aside that Mark had some other egregious facts, but those are situations in which we affirmed a court's award of fees. So this is a... You're asking us to say that the judge who was there on site and the magistrate judge who was there on site should not be allowed to exercise their discretion and deny fees in a circumstance like this. Right. We are asking... That is exactly right. The district court erred here in its assessment of the evidence with respect to the strengths or lack thereof of Uniloc's infringement position. The court just erred by dismissing Uniloc's conduct as well where they were leveraging litigation costs to get nuisance value settlements. So yes, we are asking that the court reverse because there's been a clear error of judgment in weighing relevant factors. And one of those is the fact that Uniloc brought this case with no basis for their claim construction. And this is an example of a Raylon type case where the construction falls below the threshold. What Uniloc did here was equate the claim term attempts with activations. And as the Markman order states, to advance that claim construction, Uniloc actually deviated from the specific claim language. The Markman order also concluded that the specification indicates that only attempts are tracked and not activations. And tracking attempts and tracking activations are absolutely two different things. And I actually think it would be helpful to do an analogy here where the counting of the patent claims is like tracking shots in basketball, attempted shots. And then if you look at the patent claim, you would be focused only on the player. You'd look and you'd count how many times the ball left his or her hands. That's tracking attempts. Whereas the Acronis software, everyone agreed, but everyone agreed if you look at it in the basketball analogy, it does not track or even know how many attempts shots were made. Instead, Acronis only counts and looks at whether the ball went through the basket. So the patent counts the number of times the ball left the player's hands. Acronis looks at the number of times the ball goes through the basket. They're two different counters and they happen in two different places. And the Markman order significantly confirmed that an attempt is referring to the step in the process prior to activation. So that was clear from the beginning. They shouldn't have equated them. What are some of the other reasons it was? Counsel, even in Rayla, in the case upon which you rely, we actually reversed the finding that the claim construction position was objectively unreasonable. And we allowed the court to consider whether the case was exceptional, you know, for other reasons. But, you know, and yes, we did say that there may be cases where it's so absurd that it could justify an exceptionality finding. But in that case, we were pretty strict about how absurd it would have to be, right? There is a threshold. And in this case, that threshold has been met by Unilock by equating these two terms that have absolutely no foundation. Even if you just look at the claim itself, the claim language itself, you can see attempts and activations are two different things. And of course, the specification doesn't support them in any way either. And then the final needle in the coffin is the prosecution history. So weren't most of the other claim constructions proposed by Unilock upheld? That's a really interesting thing that Unilock told you. They say they prevailed on 16 out of 17 terms. That's not true. Only four were disputed. And of the four, the district court actually adopted Unilock's construction for two of them, two of the four. And then you can just compare looking at Appendix 433 and then also 437 and 439. And they obtained a lot of, what, over a million dollars in settlements, which means that other defendants thought that there was something worth settling on. Your Honor, we pointed to other settlements as a fact, but those settlements averaged out to a number that is low when you look at the number of defendants in the case. So I'm not saying what they thought, but a lot of times defendants are pushed to settlement exactly because of the cost of litigation that, going forward, is heavy and it's easier and sometimes cheaper, often cheaper, just to pay and get out. And that's what a nuisance settlement often is. In this case, unlike other cases where we have sent the matter back, the court recognized that it could consider those factors, but it just said it didn't tip the balance enough. Isn't that right? Yeah. The court did consider the factor of other defendants, but if you look at the opinion, you'll see that on the claim construction analysis, well, there really isn't much analysis at all. It's not deep. It's not long. And I think that is what contributed to the clear error of judgment here in weighing the relevant factors because they simply were not fleshed out conclusory statements. And so that's part of the problem. And of course, you'll see absolutely no reference to the prosecution history here, which, in this case, Uniloc had added the language counting attempts to its claim, and the presumption is that amendment was made for purposes of patentability. Uniloc does not refute that. And then, in alleging infringement against Acronis, they're alleging that Acronis is infringing when Acronis is using the old technical... Counsel, I'm sorry. I don't think you understood my question. My question is that the magistrate judge understood that she could consider the litigation tactics and how the settlements were done and whether the settlements were just nuisance value settlements that, in cases where they had no reasonable basis to bring them, that, in other words, she understood that that was a factor she could consider, and she ultimately said it didn't get her there, right? She did consider that factor and mentioned it, yes, and also the settlements discussions between the parties. But again, the magistrate's opinion is very conclusory, and we're saying that, in this case, the court has abused its discretion. Its ruling is clearly erroneous and has not looked at all of the factors deeply enough, especially the claim construction issue. Now, there's also, of course, the issue of what happened post-Markman. If there was any doubt about the lack of merit after the Markman order, and just like a justicand, this was completely based on... Right, but this wasn't a long period of time. What the magistrate judge expressly said was six weeks was not too long for them to assess the Markman order, to continue trying to see if they could get any kind of settlement accomplished, and then to ultimately decide to walk away. So, I mean, how do we reverse that kind of a factual finding? I think that factual finding is looking at the wrong aspect. Six weeks is not the issue. It's what happened during that time. And Uniloc actually cited a case that shows this. They cited site update solutions to really say six weeks isn't that long, but it's not about the number of the days or the weeks. It's what's happening during that time. That case, in site update, basically, after the site update lost on claim construction, shortly after the hearing filed a stipulation dismissing the suit with presidents, there's nothing in the record about going after Newegg during that time to try to get a nuisance settlement, and there's no deadline looming. There's nothing going on in that case. In our case, what was happening was significant after Markman. For one, Uniloc was using the fact that an export report deadline was approaching as a hook to try to get Acronis to pay a small amount of money to settle, and they made comments about, you know, we've got these states coming up and we're incurring fees, so you might want to settle. And number two, Uniloc had no intention to prepare its own export report and instead was planning to pull the plug on the case right before reaching that deadline, which they did. And during all this time when they're pushing us to pay them, they had no case. They had no case of infringement. They had it not from the beginning, but even after the Markman, they could not argue that they had any case. Now on the topic of nuisance value settlements, it's clear that they were trying to get Acronis to pay something to go away before incurring any expenses, and those offers were arbitrary. They had no connection to the merits of the case and no tie to potential damages. And Uniloc's behavior here shows that they were ignoring this court's warning in AonNet versus Flagstar that the appetite for licensing revenue cannot overpower a litigant, and it's counsel's obligation to file cases reasonably based in law and fact and to litigate those cases in good faith. And just like the Blackbird case, Uniloc conduct supports the determination that the case is exceptional. So, Your Honors, we believe that this case is not plain vanilla. The claim construction that was brought forth by Uniloc was not a mine-run case. In mine-run cases, patentees don't completely ignore the claim language like was done here. They also don't know the prosecution and the prosecution history. And Your Honor, I see that I've reached the end of my time, so I'll reserve for rebuttal unless there are questions. Any more questions at this point? No. No. Okay. Thank you. Then we'll hear from Mr. Jacobs. Good morning, Your Honors. May it please the Court, my name is Aaron Jacobs, and I represent the Uniloc parties in this appeal. Uniloc asked this court to affirm the judgment of the magistrate and district court judges. Those judges each spent five years supervising litigation regarding this patent in suit. They reviewed the totality of the circumstances in this case, and they did not abuse their discretion. Your Honors. What was the justification for reading attempts the way that Uniloc asked the court to read it? Your Honor, we read it as a generic term. If you look at the claim language, it can be successful or unsuccessful or both. There was no discussion, for example, in the prosecution history about the reason for adding attempts. It was simply added. And so, under our plain language construction, we thought that it could include either successful or unsuccessful or both. Your Honors, everything I might want to say, I believe, was laid out in Uniloc's... But the court, wait, even during the claim construction hearing, while the court didn't find the case exceptional, the court did find that argument to essentially be absurd, right? No, Your Honor. It didn't say it was absurd. The court said there was some weaknesses, not that it was weak, but there were some weaknesses. Your Honor, there were... That's what the court said in the fee order. That's not what the court said in the claim construction order, did it? I don't believe in the claim construction order. It called it absurd either. Your Honor, claim construction is a question of fact, of law, and in every case, someone is going to win, someone is going to lose. This patent had, across the cases, 17 terms construed. Of those 17, 16 were either those proposed by Uniloc or were effectively those proposed by Uniloc. 16 out of 17 terms. Construction of this one-term attempt was itself a very odd one. Everyone agreed it should be given its plain meaning, but then Acronis demanded a definition of that plain meaning. And in all events, there was nothing in the prosecution history that suggested that attempts was being given this particular construction. It was simply added amongst a bunch of other changes. Even the prosecution history portions that Acronis points to shows that it was amid a number of other changes to the claim language. Let's talk a little bit about this six weeks delay after the claim construction. It is clear, apparently it's undisputed, that while whatever conversations or negotiations were going on, they had no choice but to incur costs, expert costs and so on, in preparing for the possibility of continuing. And although the magistrate judge ordinarily, one might agree, that six weeks isn't very much in the progress of litigation, but on the facts of this case, when costs are being incurred, doesn't it become quite significant? Your Honor, I'd like to note first that during that six weeks period, the deadline for expert reports was actually moved out. And so there already was one extension. As for why it took so long, as we explained in our principle brief at pages 16 to 20, and as we demonstrated graphically at page 40 of our principle brief, Acronis dragged things out, asking variously for portfolio license, for license to the 696 patent and also the 216 patent, and for a covenant not to sue, among other things. Again, if you look at the evidence we provided, if you look at the chart on page 40, during this time period, during the entire time period, there were offers that Acronis asked about. Acronis would ask about, okay, how much for the 696 and the 216? And Unilock would get back within a day. And then Acronis would take two weeks. And then Acronis would say, okay, how much for the 696, the 216 and the five-year covenant not to sue? And Unilock would get back within a day. And Acronis would take another week or two weeks to respond. During that entire time period, we were waiting for responses from Acronis. Acronis was the one that dragged things out. Acronis was the one... But I mean, their argument is that you shouldn't have even been asking for money at this point, that it was just, it was basically just a holdup, when you knew that without the attempts being construed in your favor, that there was no possible way that you could prevail. Your Honor, if they had simply said, we are not interested in any licenses at all, then we would have dropped it at that point. But they were asking for a license to the patent in suit. This is not as if they were... Well, they were asking for a portfolio license, right? No, Your Honor. If you look at, for example, yes, on the 2nd of March, they asked about a portfolio license. We responded about a portfolio license, and we also responded about a 696. On the 9th of March, Acronis asked about the 696, the 216, and Fiverr covenant not to sue. We responded later that day. On the 27th of March, they provided what was frankly a untenable proposal where Unilock would pay Acronis. Again, they were constantly coming to us and saying, how about this? How about that? How about the other thing? And they were always throwing in the 696. They were throwing in the 216, which they didn't even mention to this court. We couldn't, amidst this, drop things, and we were frankly waiting for them to get back to us. We also didn't know until we finally had access to their source code whether any iteration of the system might infringe. Your Honor, that actually brings me to one point, and frankly, the only point in my entire list that I specifically want to address, which is that Unilock's principle brief pointed out that Acronis repeatedly misstated the record, the district court, the magistrate judge, and the district court, and regrettably, in Acronis' reply brief, which Unilock couldn't respond to, Acronis artfully misled this court about a well-known interpretation of the Eastern District of Texas' local patent rules, which interpretation is relevant to the question of Acronis' failure to produce source code. Why weren't the documents, though, that they produced in 2016, why were they inadequate? Because they don't necessarily address every single iteration, and Your Honor, that actually brings up the exact point I'm trying to make. The Eastern District of Texas has expressly and definitively stated that its local rules require production of source code in all cases involving source code. Anyone who has litigated in the Eastern District of Texas knows this. Specifically, in Edward D. Aioli Trust v. Avignon Corporation, the defendant made the exact same argument that Acronis made here in its reply brief, and the Eastern District of Texas explicitly rejected it. Okay, I hear what the rule says, but why would source code be necessary in this particular case? Well, Your Honor, as that court said, and I'm going to quote from this case, it's a PR 3-4A imposes an affirmative obligation on the accused infringer to produce source code and all other relevant materials reasonably needed for the plaintiff to understand for itself, and the Eastern District of Texas italicized that, for itself, how the technology at issue operates and functions. We understood how one iteration of that system worked, and that's what those documents showed, but the Eastern District of Texas has explained that Uniloc was entitled to determine for itself how that software worked, and it was entitled to determine for itself. That seems kind of extreme in a circumstance where Uniloc is basically bringing lawsuits against the world and accepting nuisance value, so you're saying that you can just bring a lawsuit and they have to give up their source code, and then you take pennies on the dollar to walk away. Your Honor, I would dispute that there were nuisance value settlements. The value of the seven cases that were brought along with Acronis, those settlements exceeded $1.3 million. These are not nuisance value settlements. These are in excess of $250,000 each. In terms of the offers that Uniloc was making to Acronis, Acronis, I'm not quite sure what sort of Goldilocks offer it would think is appropriate. When it finally produced its sales numbers in late December of 2016, we looked at this and we said, okay, this is less than some of the other defendants have settled for, and therefore we will make a lower offer. The fact that Acronis hired expensive counsel and so that their defense costs exceeded the relatively de minimis amount of infringement they might have... Well, come on. Come on. Come on. Now, that's an absurd argument. I'm sorry. They have the right to hire counsel that they think is necessary to defend them and to make sure that it's clear that your arguments are frivolous. I mean, they don't want to be faced with having to turn over source code to someone who's really has no basis to argue that they're entitled to it. And I have no dispute with that, Your Honor. In fact, I accept that. The point that I'm trying to make is that the floor for what is considered a nuisance value settlement can't be the cost of the counsel that defendant hires. If defendant's counsel was hired for $100,000... I have never heard of a patent litigation that cost someone less than $250,000. See that as it may, this court has also said that there is no de minimis amount of infringement below which a plaintiff must give up its patent rights. If Acronis, if you take the, again, the 21 cases that settled by that point, and if you take the approximate average value of those settlements and you compare it to Acronis' infringement, it can't be the case that Uniloc would have to say, well, the value of Acronis' infringement is less than it must have paid for its counsel, and therefore we must give up our patent rights as to Acronis. But wait, Uniloc's only theory of infringement was that there was infringement because the Acronis' system counts the number of activations, right? That was the, that was the theory until such time, we were not certain. We could not be certain until such time as we had access to the source code, exactly how Acronis' systems infringed, whether they had all attempts, some, or... I think you need to move on from this source code argument because you're losing me. All right. Yes, based upon the evidence we had to date, it was successful attempts. We made offers based upon the information they gave us. And if they sell relatively few systems, then we are going to make a relatively lower offer to them. But there was a floor below which Uniloc would not go. When we made the offers and they said no as to, you know, we said, look, at this point, just a 696. And they said no. We said, OK, we're not going to go below that floor. We are not going to go into nuisance value settlement. We would rather dismiss. And that's what we did. Janice, again, as I said, the only point I wanted to make walking into this was that after Acronis repeatedly misstated the record, the district court and the magistrate judge in this court, Acronis misstated the law to this court in its reply brief. Unless there are any other questions, I will yield the remainder of my time. Any more questions for Mr. Jacobs? No. Thank you. All right, Ms. Carly, you have the last word. Thank you, Your Honor. Just a few things. With respect to the claim construction, Uniloc had initially and had argued that there was plain meaning for the term. And just to put an emphasis on that, you know, a patentee cannot do what Uniloc did here. And this is also pointed out in MARC Tech, where you can just say plain meaning and then mold it to your case and see if it works. Plain meaning does not mean you can ignore the canons of claim construction. And here, of course, the later discussion that came out about genus and species, again, that's just something that has no foundation in the intrinsic evidence. Also, with respect to adding the language about counting attempts, you know, simply adding is still covered under FESTO. So that is something that, again, they have not rebutted the presumption that this claim was amended in light of the prior art, which counts activations. With respect to this new case that counsel cited, we haven't received a copy, so I can't comment on it. I believe they should have sent it to us, but I don't. Yes, that's right. OK. And then last, with respect to settlement, just one last point there. Any of these offers and discussions, you know, need to be tied to the merits of the case. And that was one of the main problems here with these settlement offers, that they were not tied to the merits. And at the time, they had no merits at all. So with that, unless there are any other questions, Your Honor, I will yield my time. Any more questions for Ms. Carlin? No. OK. Thank you. Thanks to both counsel. The case is taken under submission.